UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILLIP CARRINGTON
Petitioner,

v.

COMMONWEALTH OF MASSACHUSETTS,

Respondent.

No. 19-cv-11552-RGS

**REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS HABEAS PETITION**

CABELL, U.S.M.J.

## I. INTRODUCTION

Phillip Carrington is presently serving a term of incarceration at the Old Colony Correctional Center in Bridgewater, MA following his conviction on charges of second-degree murder. He challenges his conviction on several grounds and petitions pro se for habeas relief pursuant to 28 U.S.C. § 2254. The Commonwealth of Massachusetts as respondent moves to dismiss the petition and the matter has been referred to this court for a report and recommendation. For the reasons that follow, I recommend that the motion to dismiss be allowed.

## II. RELEVANT BACKGROUND

In 2016 Carrington was convicted in Suffolk Superior Court for the second-degree murder of Celestine Walker, and for violating an abuse prevention order. Carrington appealed his

conviction on four grounds. On June 29, 2018, the Massachusetts Appeals Court (MAC) affirmed his conviction after rejecting all four arguments. *Commonwealth v. Carrington*, 93 Mass. App. Ct. 1117, rev. denied, 480 Mass. 1107 (2018).

First, Carrington argued that the court erred in denying his motion to dismiss on the ground that the Commonwealth failed to present exculpatory information to the grand jury regarding a key witness' prior inconsistent statements to the police. The MAC found that, although the prosecutor did not present certain evidence to the grand jury, it did not constitute withholding exculpatory evidence because the witness' grand jury testimony was in fact consistent in material respects with the witness' prior statements.

Carrington argued next that the court erred in denying his motion to suppress allegedly coerced inculpatory statements he made while being assaulted. The MAC found, however, that even if Carrington's mental state was affected by his being physically confronted and assaulted by the victim's children, it did not render his statements involuntary.

Carrington argued next that the court abused its discretion when it admitted prior bad acts of his that pertained to incidents of strangulation because their potential for undue prejudice outweighed their probative value. The MAC rejected this argument after noting that the court had limited the scope

of the evidence, and the evidence was properly admitted in any event to show the hostile nature of Carrington's relationship with the victim, and his pattern of acting on that hostility.

Finally, Carrington argued that the court erred when it declined to give a *Bowden*[1] instruction because the absence of the instruction gave the jury the impression that inadequacies in the police investigation were no longer open issues for their consideration. The MAC found that there was no factual basis for this claim where Carrington was able to bring out any alleged inadequacies in his opening statement, in his closing argument, and through his examination of multiple witnesses. The MAC found that the judge accordingly did not err in not giving a *Bowden* instruction, because it was simply not required.

The Supreme Judicial Court denied further appellate review on September 13, 2018. *Commonwealth v. Carrington*, 93 Mass. App. Ct. 1117, rev. denied, 480 Mass. 1107 (2018).

On July 16, 2019, Carrington initiated the present action, raising the same four arguments he raised before the MAC and SJC. (D. 1). On December 16, 2019, the Commonwealth (following granted extensions of time) moved to dismiss on the ground that

[1]In *Commonwealth v. Bowden*, 379 Mass. 472, 485–486 (1980), the Supreme Judicial Court held that the "failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense." The error in Bowden was the judge's removal of the adequacy of the investigation evidence from the jury's consideration.

Carrington had failed to exhaust at least three of the claims. (D. 9, 11, 15).

On January 28, 2020, this court notified Carrington that he had failed to respond to the motion to dismiss. The court *sua sponte* set a deadline of February 14, 2020 and indicated it would treat the motion to dismiss as unopposed if no response were received by that date.

Carrington did not acknowledge the court's issuance or file a response by the extended deadline. Approximately four months later, on June 5, 2020, the court issued an order to Carrington to show cause why his petition should not be dismissed for failure to prosecute. (D. 22).

On June 18, 2020, the petitioner responded via a letter to the Clerk of Courts. He (for the first time) asked to have counsel appointed, and added, "I been locked in due to the coron [*sic*] virus no one where I'm at could go to the Law burry [*sic*] for anything. Could you please somehow give me a stay until I can get someone to help me." (D. 24).

Construing the letter as a motion for the appointment of counsel, this court issued an order denying the motion for counsel on the ground that Carrington had not shown "exceptional circumstances" required for the appointment of counsel in a habeas case. *See DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). (D. 25). But, in light of Carrington's claim of a lack

of access to the law library, the court granted him an additional 30 days to file a response to the Commonwealth's motion. (D. 24).

By way of letter dated July 13, 2020, Carrington responded that he could not understand the court's most recent issuance because of a "mental illness" upon which he did not further elaborate. Carrington asserted that he was indigent and again asked for the appointment of counsel. He once again claimed to be unable to "get to the law library" because "we are still on lock down." (D. 27).

In light of the repeated complaint that he was being denied access to the library the court asked the Department of Correction (DOC) to explain what restrictions if any had been imposed on inmates' access to the facility's law library as a result of the Coronavirus pandemic. (D. 28).

The DOC responded through a signed affidavit from Old Colony's Superintendent, Stephen Kennedy. (D. 30-1). In relevant part, Supt. Kennedy stated that inmates had not been allowed to be physically present in the law library for roughly only one week, between April 3 and 10, 2020, but were allowed to make requests for the delivery of legal materials to their cells, which were fulfilled within 24 hours. (Id. ¶8). Supt. Kennedy explained that inmates were allowed to physically be present in the library after April 10th in small groups during

certain time slots throughout the day. He explained that they also always retained the ability to request materials to be brought to their cells. (Id. ¶9). He stated that Carrington never submitted any written requests for legal materials or filed any grievances related to access to legal materials. (Id. ¶ 12). The petitioner has not challenged or rebutted these assertions.

## III. LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief on claims previously adjudicated on the merits only after the petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(c); *see Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (explaining that § 2254(b)(1)(A) requires that state prisoners give state courts a fair opportunity to review their claims and correct alleged constitutional violations before review by a federal court). A claim for habeas relief is not exhausted unless it has been "fairly and recognizably" presented in state court. *Sanchez v. Roden*, 753 F.3d 279, 294 (1st Cir. 2014) (quoting *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir. 2000)). In other words, "a petitioner must have tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Id.* (internal quotation marks and

citations omitted). Further, AEDPA permits habeas relief only if the previous adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). Furthermore, "[e]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." *Kater v. Maloney*, 459 F.3d 56, 61 (1st Cir. 2006) (citing *Estelle*, 502 U.S. at 67–68).

## IV. DISCUSSION

As a threshold matter, Carrington's claims should be deemed waived where he has failed despite multiple opportunities and a

(perhaps too) generous extension of several months to submit a supporting memorandum of law either in support of his claims or in opposition to the Commonwealth's motion to dismiss. To be sure, Carrington contends that his ability to submit a brief was hampered by a lack of access to OCC's law library but the court does not credit this assertion. The DOC submitted a sworn affidavit from OCC's Superintendent which directly contradicted Carrington's general claim of an ongoing lack of physical library access, and clarified that Carrington at all times retained the ability to request materials from the library but never availed himself of that resource. Carrington notably has not challenged the affidavit.

Moreover, even acknowledging that Carrington's access to the library was impacted for a brief period of time in April 2020, it is undisputed that he had ample time to brief his claims *before* the onset of the pandemic, and enjoyed full access to the library at the time the court issued its show cause notice in June, at which time he (falsely) claimed that he still could not respond because he still did not have library access. Against this backdrop, Carrington's claims should be deemed waived and the petition should be dismissed. *See Powell v. Tompkins*, 783 F.3d 332, 349 (1st Cir. 2015) (deeming an argument as waived for habeas purposes where petitioner failed to indicate how the state's resolution of the claim violated

federal constitutional law, including the failure to "cite to any Supreme Court authority . . . to grapple with the SJC's analysis at all"); *see also Miller v. Marchilli,* No. 17-10469-DJC, 2019 WL 145559, at *6 (D. Mass. January 9, 2019) (petitioner waived claim raised in his petition but not addressed in his memorandum); *Perkins v. Russo*, No. 02-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. August 31, 2007) (habeas claim that trial court improperly limited closing arguments deemed waived where petitioner "present[ed] no arguments in support of this claim"); *Blake v. Medeiros*, No. 14-CV-11845-IT, 2017 WL 4076104, at *4 (D. Mass. Sept. 14, 2017) (concluding two claims waived where, among other things, "[the petitioner] does not address either claim in his memorandum"); *Smiley v. Maloney*, No. 01-11648-GAO, 2003 WL 23327540, at *15 (D. Mass. October 31, 2003) (finding claim waived where "petitioner has not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point"), aff'd, 422 F.3d 17 (1st Cir. 2005).

Even if found not to be waived, no claim entitles Carrington to habeas relief.

*Claim One*

Carrington contends that the Commonwealth failed to present important exculpatory information to the grand jury. In particular, he argues that a key witness made a statement to the

police that “she saw the victim and defendant walk in the direction of the apartment, but did not see them enter”, and that this exculpatory statement was not presented to the grand jury. Carrington argued before the MAC that the statement was highly material to the question of probable cause and the omission of the statement from the grand jury proceedings caused the grand jury to miss an opportunity to discredit the witness. Carrington is not entitled to relief on this claim for at least three reasons.

First, this claim is not cognizable on federal habeas review because a challenge to the operation of a state grand jury proceeding asserts at most only an error of state law. Indeed, few issues concerning state grand jury procedures are subject to federal habeas review. This is generally so because of the long-settled law that “indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment.” *Branzburg v. Hayes*, 408 U.S. 665, 687–88 n. 25 (1972). Accordingly, habeas courts have routinely found that claims of deficiencies in state grand jury proceedings do not implicate federal law and therefore are not cognizable. *See e.g., Lewis v. Graham*, No. 9:16-CV-01507-JKS, 2020 WL 586750, at *4 (N.D.N.Y. Feb. 6, 2020) (holding error in state grand jury proceedings not cognizable on habeas review where petitioner alleges that prosecutor presented false

evidence in the grand jury); *Glazier v. Cate*, No. CV 12-5692-JFW PLA, 2014 WL 6769619, at *10 (C.D. Cal. Dec. 1, 2014) ("[E]rrors that occur at a state grand jury proceeding do not deprive a defendant of a federally protected right and are not cognizable on habeas review."); *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1034 (D. Ariz. 2007) ("Because the jury ultimately convicted Petitioner of both charged offenses, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.").

Second, even if cognizable, the claim cannot be considered here because Carrington has failed to exhaust the claim by presenting it to the highest state court. A state prisoner is not entitled to habeas relief in federal court unless he has first exhausted his available remedies in state court. 28 U.S.C. § 2254(b); *see O'Sullivan v. Boerkel*, 526 U.S. 838, 839 (1999); *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 819 (1st Cir. 1988). To exhaust a claim, a petitioner must "show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] *federal* claim." *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (emphasis added) (citing *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997). For that reason, "a petitioner's failure to present his federal constitutional claim to the state courts is ordinarily fatal to

the prosecution of a federal habeas case." *Jackson v. Coalter*, 337 F.3d 74, 86 (1st Cir. 2003).

Here, although Carrington did raise this argument before the MAC, which was the highest court to hear his case after the SJC declined further appellate review, his MAC brief and the MAC opinion itself reflect that he never framed this claim as presenting a *federal* constitutional issue. The petitioner did not, for example, employ in his brief any of the methods which this Circuit has stated would fairly raise a federal constitutional issue, such as "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, [or] assertion of a state-law claim that is functionally identical to a federal constitutional claim." *Coningford*, 640 F.3d at 482; *c.f. Goodrich v. Hall*, 448 F.3d 45, 48 (1st Cir. 2006) (remedies exhausted and merits of claim of improper state grand jury procedure reached where habeas petitioner expressly relied on the Fourteenth Amendment, explicitly invoked the Due Process Clause, and cited to apposite federal cases).

Third, even assuming this claim was properly before the court, it fails on the merits because the witness did not make inconsistent statements and there thus is no factual basis for

Carrington’s claim. The record reflects that the witness told the police that she drove the victim and the defendant to the victim's apartment, that she saw them walking towards the apartment where the victim lived, but that she did not actually see them go into the apartment. The witness testified to the grand jury that she saw the defendant and the victim walk towards and enter the victim's building but did not see them enter the apartment itself. *Carrington*, 93 Mass. App. Ct. 1117 at 1.

This court agrees with the motion judge and the MAC that there was no inconsistency between these two sets of statements. Rather, the witness’ statement to the grand jury was “consistent, in material respects, with her earlier statements to the police that she drove the victim and the [d]efendant to the victim's apartment...Even though [the witness] told the police that she did not see the defendant and the victim go into the victim's apartment, and then told the grand jury that she saw them enter the building, this was consistent since she was responding to two different questions: the first being whether she saw them actually get into the apartment, and the second being whether she saw them go into the building.” *Carrington*, 93 Mass. App. Ct. 1117 at 1 (internal quotations omitted).

Moreover, under the federal standard, any error in the grand jury proceedings would be harmless beyond a reasonable

doubt where the trial jury heard all the evidence and returned a guilty verdict. *See United States v. Williams*, 504 U.S. 36 (1992) (district court may not dismiss otherwise valid indictment on ground that government failed to disclose to grand jury "substantial exculpatory evidence" in its possession); *United States v. Mechanik*, 475 U.S. 66, 70 (1986) (any error in grand jury proceeding connected with the charging decision would be harmless beyond a reasonable doubt after petit jury's verdict).

*Claim Two*

Carrington contends that the trial court erred when it failed to suppress statements he made while he was being physically assaulted and intimidated by members of the victim's family. According to the record, on the day the victim's body was found, the victim's children entered the apartment of a friend of the petitioner. Upon finding the petitioner there, the petitioner stated, "it was an accident" in reference to the victim's death, and the victim's children proceeded to "hit, kick and punch" the defendant while asking about the mother's whereabouts." Carrington did not sustain any injuries and there were no signs of distress when the police arrived. *Carrington*, 93 Mass. App. Ct. 1117 at 2. As with Claim One, this claim fails for multiple reasons.

First, although the Commonwealth appears ready to concede that Carrington did present this claim in federal terms to the MAC, and thus has exhausted the claim for habeas purposes, this court finds that he has not. The Commonwealth's apparent concession most likely derives from the section of the petitioner's brief to the MAC dealing with Claim Two, where he describes this issue as being of a "constitutional proportion." Specifically, he argued there that:

> Where the issues are of constitutional proportion and preserved for review, as they were preserved here by the defendant's motion to suppress and by his continuing objection at trial, this court reviews to determine whether the constitutional error, if found to exist, was harmless beyond a reasonable doubt. *Commonwealth v. Novo*, 442 Mass. 262, 266 (2004).

But simply declaring an issue to be of "constitutional" proportion is not enough to make the claim a federal one, particularly where Massachusetts courts may decide issues of constitutionality relative to the Commonwealth's Declaration of Rights rather than the U.S. Constitution. *Adelson v. DiPaola*, 131 F.3d 259, 263 (1st Cir. 1997) (mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim). Indeed, the case the petitioner cites to, *Commonwealth v. Novo*, is an SJC decision discussing the issue of voluntariness of a defendant's own statements as it pertains to the Massachusetts Declaration

of Rights. In doing so, The SJC does not discuss the United States Constitution or any United States Supreme Court decisions. This distinction is especially salient here because Massachusetts' common law is more stringent than federal law on this issue. *Compare Lego v. Twomey,* 404 U.S. 477, 487-489 (1972) (government need prove voluntariness of an incriminating statement only by a preponderance of the evidence) and *Commonwealth v. Tavares,* 385 Mass. 140, 149-150 & n. 15, *cert. denied*, 457 U.S. 1137 (1982) (requiring proof beyond a reasonable doubt). For these reasons, I find that the petitioner has not exhausted this claim where he did not present it as a federal claim in the state court. *See Jackson,* 337 F.3d at 86.

And, for similar reasons, I find that Claim Two as presented to the MAC asserts only an error of state law and for that reason is not cognizable on habeas review.

Finally, Claim Two would fail even if framed as a federal due process claim and reached on the merits, because federal law forbids only involuntary confessions made to law enforcement and therefore would not apply to statements made to the victim's children. *Colorado v. Connelly*, 479 U.S. 157, 166 (1986) ("The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."); *United States v.*

*Birnstihl*, 441 F.2d 368, 370 (9th Cir. 1971) (*Miranda* warning requirements and protections apply only to law enforcement).

*Claim Three*

Carrington claims that the trial court abused its discretion when it allowed prior bad acts evidence that he had choked the victim on prior occasions. Carrington argues that the probative value of the evidence was outweighed by its prejudicial impact.

As with Claims One and Two above, Claim Three as presented to the MAC and in the habeas petition fails to invoke federal law or, regarding this claim, the federal rules of evidence, and asserts only that the state court abused its discretion in admitting evidence under Massachusetts' rules of evidence. As such, the claim fails because (1) it asserts only an error of state law and therefore is not cognizable on federal habeas review; and (2) it has not been exhausted. *Coningford*, 640 F.3d at 481 (habeas petitioner's claim of improvident admission of evidence of prior bad acts in state court trial was "unexhausted and untenable").

The claim would fail even if reframed in federal terms and reached on the merits because the court would have to find that the trial judge's discretionary ruling met the exceedingly high standard of violating "fundamental fairness," which the Supreme Court has purposefully defined "very narrowly." *Dowling v.*

*United States*, 493 U.S. 342, 352 (1990). Rather, the trial judge's decision to admit the prior bad acts evidence merely needs to "exist in the universe of plausible evidentiary rulings." *Coningford*, 640 F.3d at 485. In that regard, the court agrees with the trial judge and MAC that allowing limited testimony that the petitioner previously choked the victim was not more prejudicial than probative and served the legitimate purpose of describing "the hostile nature of the defendant's relationship with the victim and his pattern of acting on that hostility." *Carrington*, 93 Mass. App. Ct. 1117 at 2.

*Claim Four*

Carrington contends that the trial judge erred by failing to issue a *Bowden* instruction to the jury. In *Commonwealth v. Bowden*, 379 Mass. 472, 485–486 (1980), the SJC held that the "failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense," and that the trial judge erred in instructing a jury to disregard such evidence.

This claim fails for reasons similar to Carrington's three other claims. First, the claim has not been exhausted where Carrington failed to present it to the MAC in federal terms. The claim is also not cognizable on federal habeas review because improper jury instructions generally will not form the basis for federal habeas relief. *Cruz v. Maloney*, 152 F. App'x

1 (1st Cir. 2005) (petitioner's claim that trial court's jury instruction violated constitutional rights not cognizable on federal habeas review).

In any event, Carrington's claim would fail even if framed as a federal violation and reached on the merits because the First Circuit has held that a trial court's failure to give a *Bowden* instruction does not rise to the level of federal constitutional error. *Hardy v. Maloney*, 909 F.3d 494, 499 (1st Cir. 2018) (no Supreme Court case requires states to give an instruction on inadequate police investigation, which "dooms [petitioner's] argument"); *see also Lao v. Roden*, No. CIV.A. 12-11481-NMG, 2014 WL 2767091, at *2 (D. Mass. June 17, 2014) (denying habeas petition on ground of failure to give *Bowden* instruction); *Avila v. Clarke*, 938 F. Supp. 2d 151, 171 (D. Mass. 2013) (same). Moreover, there demonstrably was no error here because the trial judge did not instruct the jury to disregard any inadequacies in the police investigation, and Carrington in addition was allowed to make use of any such shortcomings in his opening statement, his examination of witnesses, and in his closing argument. *Carrington*, 93 Mass. App. Ct. 1117 at 2.

## V. CONCLUSION

For the foregoing reasons I recommend that the respondent's Motion to Dismiss Habeas Petition (D. 18) be ALLOWED.[2]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: September 3, 2020

[2] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs*., 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).